# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LINDA JAMES, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-21-CV-00110-XR |
| | § | |
| HARLANDALE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| *Defendant.* | § | |

## <u>ORDER</u>

On this date, the Court considered Defendant's motion for summary judgment (ECF No. 43), Plaintiff's response (ECF No. 49), and Defendant's reply (ECF No. 53). After careful consideration, the Court issues the following order.

## BACKGROUND[1]

This case arises out of alleged discrimination and retaliation under Title VII, 42 U.S.C. § 2000(e). Plaintiff Linda James ("Plaintiff") first became employed with Defendant Harlandale Independent School District ("Defendant" or "HISD") as a School Resource Officer in the HISD Police Department in March 2015. ECF No. 43-13. The Department, for all times relevant, was headed by Chief Michael Ramirez ("Ramirez"). ECF No. 43-6 at 5:18–22. Ramirez became Police Chief in 2012 and retired at the end of the 2021–22 school year. *Id.* at 131:6–14.

In her current role with HISD, Plaintiff serves as a School District Police Officer. She remains in this position today and "is employed on an at-will basis as a full-time, 260-day officer." ECF No. 43-5, Plaintiff Dep. Tr. at 123:16–19.

---

[1] These facts are undisputed unless otherwise noted.

In April 2018, Plaintiff was a 187-day officer.[2] Chief Ramirez and Sgt. Maria Aguilar contacted Plaintiff to inform her a 260-day officer position was available. ECF No. 43-16 at 2. Plaintiff declined the position, stating that her 187-day calendar worked best for her family. *Id.* at 1.

In August 2018, two positions, Emergency Management Officer/Corporal and Detective Investigator/Corporal, became available. Chief Ramirez sent an email advising that the positions were available on August 20, 2018. "All Department officers, including Plaintiff, were advised of the need to express interest in the positions not later than Friday, August 24, 2018 at 4:00 p.m." ECF No. 43-17 at 1.

Plaintiff alleges that she spoke with Chief Ramirez on August 22, 2018 and indicated that she was interested in the position. ECF No. 18 at 5. Plaintiff alleges that Chief Ramirez attempted to dissuade her from applying for the position, noting that it would require additional time and that she was a mother with responsibilities to take care of her children. *Id.* Plaintiff also alleges that Chief Ramirez noted that she was a 187-day employee and not a 260-day employee. *Id.* Plaintiff alleges that she was "in complete shock" after that conversation, but after thinking things over, she decided to submit an email for the position on August 24, 2018. *Id.* Defendant contends this email was "submitted well after the deadline set by the Chief" at 9:11 p.m. ECF No. 43-17 at 1. In her email sent at 9:11 p.m., Plaintiff stated: "Chief.. [sic] I did not have computer access. I'd like to.put [sic] my name in the hat. I understand if you decide not to allow it." *Id.* Defendant contends that, like all other officers, Plaintiff was made aware of the

---

[2] HISD has since moved all officers and eliminated the 187-day position, as well as the 240-day position, "to improve officer coverage and community safety during summer and holiday breaks." ECF No. 43 at 22. This structural change was applied to all Department officers and resulted in a pay increase commensurate with the increased number of duty days for an officer in a year. *See* ECF No. 43-36 ("This letter is written as a professional courtesy to advise you of the decision to increase the number of duty days for your assignment as a Harlandale ISD Police Officer from 187 to 240 effective July 1, 2020, for the 2020-2021 school year."). Today, Plaintiff is a 260-day employee with the Department. ECF No. 43-5, Plaintiff Dep. Tr. at 123:16-19.

application deadline almost five full days before the application period cut off, when the email notifying of the positions was sent on August 20, 2018. *Id.*

On October 1, 2018, Plaintiff filed her complaint with HISD, commencing Level One of the HISD initial grievance process. ECF No. 43-26. She described the decision or circumstances causing her complaint as "[d]iscrimination, defamation / slander, and creating a hostile work environment for everyone – but I do have specific accounts for myself." *Id.* at 2. Plaintiff assert that, "starting with her first grievance, harassment started and continues to this day." ECF No. 18 at 42. Among the retaliation she alleges is a changing schedule that is "[h]indering her from working side jobs," reprimands from Human Resources, and a hostile work environment. *Id.* at 42–43, 45.

Chief Ramirez was responsible for hearing Plaintiff's Level One Grievance. ECF No. 43-27. He determined that Plaintiff's requested remedial actions, including a solution for the one-hour automatic lunch deduction, the ability to apply for the position of Corporal, and the forced retirement of Sergeant Aguilar, Sergeant Russell Valdez, and Chief Ramirez would not be granted. ECF No. 43-27 at 1–2. He did, however, conclude that Plaintiff should be able to work in an environment free of harassment, discrimination, and hostility. *Id.* at 2.

Plaintiff's Level One Grievance advanced to a Level Two Grievance before a Mediation Committee, comprising six randomly selected HISD employees and administrators. ECF No. 43-28. The Mediation Committee affirmed the conclusions drawn by Chief Ramirez in the Level One Grievance. *Id.* Plaintiff then appealed the Mediation Committee's decision in a Level Three Grievance before Jerry Soto, the Executive Director of Operations, who affirmed the decisions of the various lower grievance proceedings. ECF No. 43-29. Plaintiff filed her Level Four Appeal on April 16, 2019. ECF No. 43-8 at 1. In November 2019, Executive Director of Human

Resources for HISD, Dr. Melinda Salinas, met with Plaintiff to review her concerns. Dr. Salinas addressed automatic lunch deduction, as well as her concerns about her uniform and her vehicle. *Id.* at 1–2. Plaintiff "signed off on a summary of [that] discussion and resolution in December of 2019. [Plaintiff] continued with the remainder of her grievance appeal, and after grievance hearings were abated due to COVID-19 and then rescheduled at the request of her attorney, [Plaintiff] presented the remainder of grievance [sic] to the Board of Trustees in October of 2021." *Id.* at 2. The Board denied her grievance. *Id.*

On or about February 19, 2019, and within 180 days of Defendant's alleged discriminatory acts, Plaintiff timely filed a Charge of Discrimination against Defendant with the appropriate administrative agencies, including the United States Equal Employment Opportunity Commission ("EEOC"). ECF No. 18 at 19. Plaintiff's charge alleged age, race, and sex discrimination, as well as retaliation. *Id.* On September 11, 2020, Plaintiff received Dismissal and Notice of Rights from the EEOC. ECF No. 43-4 at 1. Plaintiff subsequently filed her initial suit in the 166th Judicial District of Bexar County, Texas within 90 days of receiving her EEOC Notice, on December 10, 2020. ECF No. 1-2 at 3. After being served with the lawsuit, Defendant removed the case to this Court on February 4, 2021. ECF No. 1 at 1. Plaintiff filed her first amended complaint on June 1, 2021. ECF No. 18. Defendant thereafter filed a motion to dismiss for failure to state a claim (ECF No. 24), which the Court granted in part and denied in part after a hearing on the motion. ECF No. 34. Only Plaintiff's claims for sex discrimination and retaliation remain pending before the Court.

On July 11, 2022, Defendant filed a motion for summary judgment on Plaintiff's claims for sex discrimination and retaliation. ECF No. 43. Plaintiff responded on August 15, 2022. ECF No. 49. Defendant replied on August 29, 2022. ECF No. 53.

# DISCUSSION

## I.      Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For the Court to conclude that there are no genuine issues of material fact, the Court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the Court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party, *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II.     Analysis

### A.     Sex Discrimination

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment because of race, color, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). Where a plaintiff lacks direct evidence of discrimination, the burden-shifting framework established by the Supreme Court in *McDonnell Douglas* governs. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

In order to survive summary judgment under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination by showing that she: "(1) belongs to a protected class; (2) applied for and was qualified for a position for which applicants were being sought; (3)

was rejected; and (4) a person outside of her protected class was hired for the position." *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007).

If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action. *Okoye*, 245 F.3d at 512. If the defendant satisfies its burden of production, the plaintiff may still prevail by offering sufficient evidence to create a genuine issue of material fact that either (1) the defendant's reason is false and is a pretext for discrimination, or (2) that although the defendant's reason is true the plaintiff's protected characteristic was a "motivating factor" in its decision. *McDonnell Douglas*, 411 U.S. at 804–05; *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 394 (5th Cir. 2008). Subjective belief of discrimination, however genuine, and conclusory statements cannot be the basis of judicial relief. *See Jones v. Gulf Coast Rest. Grp., Inc.*, No. 21-60052, 2021 WL 3465000, at *4 (5th Cir. Aug. 6, 2021).

The Court concludes that Plaintiff has not established a *prima facie* case of sex discrimination under Title VII. It is undisputed that Plaintiff is a member of a protected class (female) and is thus protected under Title VII from discrimination based on sex. Defendant, however, alleges that Plaintiff cannot success in establishing the second element of her *prima facie* case because she missed the deadline to apply for the position. *See* ECF No. 43-17 at 1 (indicating that Plaintiff's email stating her interest in the position was sent at 9:11 p.m. and that the deadline Chief Ramirez set for applying was 4:00 p.m.). The EEOC, in its investigation, similarly found that Plaintiff had not applied on time. *See* ECF No. 43-4 at 1 (EEOC letter from September 11, 2020 stating that the "evidence indicates you missed the deadline to apply for the position"). The Court agrees.

"[A]n employee's failure to apply for a promotion will bar a failure-to-promote claim unless there is a showing that such an application would have been a futile gesture." *Rodriguez v. Brownsville Indep. Sch. Dist.*, 739 F. App'x 227, 231 (5th Cir. 2018), *as revised* (Aug. 3, 2018) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999)); *see also Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 366 (1977)); *Claiborne v. Ill. Cent. R.R.*, 583 F.2d 143, 150 (5th Cir. 1978). To determine whether applying would be a futile gesture, the Fifth Circuit requires that the applicant be deterred from applying for a position due to an employer's known and consistently enforced discriminatory policy. *See Teamsters*, 431 U.S. at 365–68; *see also Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 245 (5th Cir. 2017) (applying *Shackelford*).

Plaintiff has failed to allege any facts indicating that her application would have been a futile gesture because she did ultimately apply to the position, albeit five hours past the deadline. Furthermore, none of the facts alleged by Plaintiff indicate that there was a "known and consistently enforced discriminatory policy" that prevented Plaintiff from applying. In fact, another female officer did timely apply and receive an interview for the position. *See* ECF No. 43-18 at 3 (Lorrie Garza's email indicating her interest in the position). Finally, Plaintiff has failed to allege that any male officers who applied late were considered for the position. In fact, only the candidates who submitted timely applications before the deadline were considered for the position. ECF No. 43-18 (timely applications received from Mark Olivares, Saul Pena, Manel Guerrero, and Lorrie Garza).

Because Plaintiff has not proffered evidence showing that she applied and was qualified for a position for which applicants were being sought, she has not met her *prima facie* burden. The burden of production therefore does not shift to Defendant under *McDonnell Douglas* and

the Court's analysis ends here. Plaintiff's claim for sex discrimination under Title VII fails as a matter of law.

### B.      Retaliation

"[A]n employer may not discriminate against an employee because the employee has 'opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *LeMaire v. La. Dep't of Transp. & Dev.,* 480 F.3d 383, 388 (5th Cir. 2007) (omission in original) (quoting 42 U.S.C. § 2000e–3). Retaliation claims are governed by the familiar *McDonnell Douglas* burden-shifting framework previously discussed. *Id.* (citing *McDonnell Douglas,* 411 U.S. 792). Under that framework, a plaintiff must first establish a *prima facie* case of retaliation by showing that (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. After making such a showing, the employer must articulate legitimate, nondiscriminatory reasons for its employment action. If the employer articulates such reasons, the burden falls back on the plaintiff to show that the employer's proffered reasons are a pretext for its actual retaliatory purpose. *See Harris v. Miss. Transp. Comm'n,* 329 F. App'x 550 (5th Cir. 2009).

Neither party disputes that Plaintiff satisfies the first element of her *prima facie* case of retaliation because she participated in an activity protected by Title VII by filing her an internal grievance in October 2018. Defendant contends, however, and the Court agrees, that Plaintiff has not satisfied the second element of her *prima facie* case of retaliation because she has not shown that she has been subjected to adverse employment action. An adverse employment action is one by the employer that "a reasonable employee would have found . . . [to be] materially adverse,

which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 68 (2006). "[N]ormally, petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id*.

To begin, any alleged retaliatory conduct has clearly not dissuaded Plaintiff's from filing additional grievances. Indeed, since filing her first grievance internally with HISD in October 2018, Plaintiff has filed two subsequent grievances as well as her EEOC complaint. ECF No. 43-5, Plaintiff Dep. Tr. at 43:24–44:3. (noting that Plaintiff, in her time of employment with HISD, has filed "two solo [complaints], and one a [sic] class action"). Plaintiff has also raised multiple informal complaints to Human Resources. *See, e.g.*, ECF No. 43-41 (Plaintiff's email to HR noting that "retaliation still continues and is not going to stop from what I see"). Plaintiff remains employed as a police officer for the Department. ECF No. 43-5, Plaintiff Dep. Tr. at 123:16–19.

Plaintiff also alleges that she has been retaliated against because Chief Ramirez and Sergeant Aguilar changed her schedule to C Shift, therefore "hindering [her] from working side jobs." ECF No. 18 at 8. Plaintiff asserts in her First Amended Complaint that she is the only female officer in the department who has ever been placed on C Shift, a duty shift that involves working on Friday and Saturday nights. ECF No. 18 at 8. Plaintiff says this schedule is normally for "rookies" and "generally assigned to new officers." *Id*. Even viewed in the light most favorable to Plaintiff, however, the Court cannot reasonably infer from Plaintiff's conclusory statements that her assigned schedule was retaliatory in nature. Defendant's proffered evidence in its motion for summary judgment includes schedules indicating other female officers *have* been placed on C Shift. *See, e.g.*, ECF No. 43-42 at 1 (indicating that Officer Elliott is a female

and was assigned to the C Shift). Additionally, Plaintiff has offered no evidence to support her claim that the C Shift is predominantly for "rookie" officers.

Next, Plaintiff alleges:

> My liberty has been impacted. I am not at liberty to complete any training. I was recently assigned to a training along with three (3) male officers who were able to take the training while they were on duty all together in the office. While I was made to take a personal day, use my own time. Sgt. Aguilar denied me the night off so that I could take the training; I was deprived of the accessible to even apply for the promotion. Chief had his mind made up regarding me being unpromotable. At times, I was made to drive my own personal vehicle to my post. Leaving me with no patrol unit. I was told to use my personal vehicle because no patrol unit or gol[f] cart was going to be assigned to me. The golf cart often times, was taken from me, most times letting me know so I could make arrangements. Except one major time, I can remember. I was left with no mode of transportation, I had to walk back to the office carrying all my gear, jacket, raincoat, and personal belongings. . . . Chief Ramirez does not even talk to me, the lack of professionalism is evident in his behavior. Chief Ramirez ordered me to a location for traffic duty outside of my usual spot. Chief made it a point to pass by while I was in the middle of the street. Instead of telling me as my supervisor I needed a traffic vest, he on the radio had dispatch tell all others to have their traffic vest while directing traffic. I responded over the radio a traffic vest had not been assigned to me yet, thus me not having one. Sgt. Aguilar asked me to see her before I left to get me a traffic vest. Chief Ramirez has done his best to break me so that I quit.

ECF No. 18 at 44–46.

Plaintiff has not satisfied her burden of demonstrating that the various allegations above amount to more than "petty slights, minor annoyances, and simple lack of good manners." *White*, 548 U.S. at 68. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id*.

Despite her complaints that she was required to complete training in her time off, while others were able to do so on Department time, Plaintiff acknowledged in her Level One

Grievance that "she must admit Chief has been gracious to [her]. He has made it possible for [her] to take a training course with pay while [she] ha[s] been off." ECF No. 43-26 at 5. Plaintiff has not provided any information about any promotion she has been unable to apply for outside of the promotion involved in her initial complaint. Plaintiff's allegations regarding lack of access to a vehicle in certain circumstances, as well as her allegations about Chief reprimanding her via radio dispatch about wearing a traffic vest, do not rise to the level of adverse employment action typically considered under the *Burlington Northern* standard. *See, e.g., Coffman v. Alvin Cmty. Coll.*, 642 F. App'x 472, 478–79 (5th Cir. 2016) ("In other cases using the *Burlington Northern* standard, this court has held against claimants alleging adverse employment actions occurred based on: assignment of janitorial duties on rehiring, *Wheat v. Fl. Parish Juvenile Just. Comm'n*, 811 F.3d 702, 707 (5th Cir. 2016), verbally harassing behavior from coworkers, *Aryain v. Wal– Mart Stores Tex. LP,* 534 F.3d 473, 479–80 (5th Cir. 2008), denial of leave of absence and statements from supervisors to coworkers that the employee 'was creating problems,'" *Holloway v. Dep't of Veterans Affairs,* 309 F. App'x 816, 817 (5th Cir. 2009).").

These purported employment actions are not sufficiently adverse to satisfy the second element of Plaintiff's *prima facie* claim for retaliation.

Finally, Plaintiff, referring to HR (Dr. Salinas and Ms. Faith Molina) and Sergeants Aguilar and Gutierrez, makes various allegations that "[t]heir agenda was to find dirt on me to continue to reprimand and harass me, trying to push me out." ECF No. 18 at 43. She alleges that she has been reprimanded and investigated at various points in the years since filing her initial grievance for various situations. *Id*. at 45–46.

Even if Plaintiff successfully made out a *prima facie* case of retaliation on these allegations of investigation and reprimands, she fails to rebut Defendant's legitimate, non-

12

discriminatory reasons for investigating and reprimanding Plaintiff over the course of the last three years. *See, e.g.*, ECF No. 43-31 (explaining that Officer James could not be at work with an expired driver's license and noting that failure to meet the job requirement of holding a valid driver's license could warrant termination of employment); ECF No. 43-32 (explaining that Plaintiff was investigated for using an improper arrest cuffing technique not in compliance with the Department's policy for handling persons in custody); ECF No. 43-33 (incident report regarding Plaintiff's taking a two-hour, extended lunch without approval). Plaintiff offers no evidence outside of "mere conclusory allegations" to overcome Defendant's legitimate, non-discriminatory reasons for investigating and reprimanding Plaintiff over the course of the last three years. Such "mere conclusory allegations" are not competent summary judgment evidence. *United States v. Lothringer*, No. SA-18-CV-00373-XR, 2020 WL 4677406 (W.D. Tex. Aug. 11, 2020). The evidence on this issue is so one-sided that Defendant must prevail as a matter of law. *See Anderson*, 477 U.S. at 251-52. Plaintiff's retaliation claims are therefore dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 43) is **GRANTED.** Plaintiff shall take nothing by her claims, and her claims are **DISMISSED WITH PREJUDICE**.

Defendant is awarded costs and may file a bill of costs pursuant to the local rules. A final judgment pursuant to Rule 58 will follow.

It is so **ORDERED**.

**SIGNED** this 9th day of December, 2022.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE